IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Raymond P. Moore**

Civil Action No. 1:17-cv-00912-RM-SKC

BARRY CASTILLE,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, a municipality,
GEORGE GANN JR., in his individual and official capacity,
MATTHEW VAN PORTFLIET, in his individual and official capacity, and
CARLOS ARAGON, in his individual and official capacity,

     Defendants.

---

**ORDER**

---

Plaintiff brings this case under 42 U.S.C. § 1983.  Defendants City and County of

Denver, Van Portfliet, and Aragon have moved for summary judgment (ECF No. 97), seeking

dismissal of the claims against them.  The motion has been fully briefed (ECF Nos. 112, 126,

129, 130) and is ripe for review.  For the reasons below, the Court grants the motion.

**I.     LEGAL STANDARDS**

Summary judgment is appropriate only if there is no genuine dispute of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136

(10th Cir. 2000); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this

standard requires viewing the facts in the light most favorable to the nonmoving party and

resolving all factual disputes and reasonable inferences in his favor.  *Cillo v. City of Greenwood*

*Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "if the nonmovant bears the burden of

persuasion on a claim at trial, summary judgment may be warranted if the movant points out a

lack of evidence to support an essential element of that claim and the nonmovant cannot identify

specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d

1136, 1143-44 (10th Cir. 2013).  "The mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372,

380 (2007) (citation omitted).  A fact is "material" if it pertains to an element of a claim or

defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went

to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

Qualified immunity shields individual defendants named in § 1983 actions unless their

conduct was unreasonable in light of clearly established law.  *Estate of Booker v. Gomez*,

745 F.3d 405, 411 (10th Cir. 2014).  "[W]hen a defendant asserts qualified immunity, the

plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal

constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of

the defendant's unlawful conduct." *Id.* (quotation omitted).

To state a claim for municipal liability, a plaintiff must show the existence of a municipal

policy or custom and a causal link between the policy or custom and the injury alleged.  *See*

*Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015).  He must also "show that the

policy was enacted or maintained with deliberate indifference to an almost inevitable

constitutional injury.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769

(10th Cir. 2013).  A municipality can be liable under § 1983 only where the municipality itself

causes the constitutional violation at issue. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). Thus, to prove a municipality is liable under § 1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Id.* at 694.

## II.    BACKGROUND

On the evening of April 13, 2015, a shooting occurred in Plaintiff's neighborhood. Plaintiff was not home at the time, but his wife was. She heard screams for help, found the victim outside, and brought him into her house and then out to her porch. She also called the police and flagged down a passing police car. By the time Plaintiff and his stepson arrived at home in Plaintiff's car, multiple police cars were on the scene. Plaintiff drove around a police car and parked in front of his house. Defendant Gann, a police officer, told him he could not enter the area because it was a crime scene. Plaintiff told Defendant Gann that he lived there, and Defendant Gann asked to see his identification. Plaintiff dropped his identification but then picked it up and gave it to Defendant Gann. The parties appear to disagree about when Plaintiff was placed under arrest, but it is undisputed that after some discussion Defendant Gann told Plaintiff to turn around and put his hands behind his back. (ECF No. 126-1 at ¶¶ 28, 30.) Defendant Gann then tried to grab Plaintiff's arm, while Plaintiff tried to pull away. (*Id.* at ¶ 34.) At that point, Defendant Van Portfliet, another police officer, became involved. Because Plaintiff was attempting to pull away from Defendant Gann, Defendant Van Portfliet approached Plaintiff and grabbed his other arm. Plaintiff was then placed in handcuffs. Plaintiff, his stepson, and his wife told the officers Plaintiff was disabled, that he had undergone surgery, and

that he could not put his arms behind his back.  Nonetheless, the officers kept Plaintiff

handcuffed behind the back with a single pair of handcuffs and placed him in a police car.

Plaintiff was released from custody later that evening.  He was charged with disobedience to a

police officer, but the charge was ultimately dismissed.

Meanwhile, Defendant Aragon, another police officer, asked Plaintiff's wife to consent to

a search of her house because he believed there was blood evidence inside.  After about thirty

minutes of discussion, Plaintiff's wife agreed to allow the search, but the parties dispute whether

her consent was coerced.  Plaintiff alleges that his wife was forced to consent to the search

because Defendant Aragon promised her he would release Plaintiff and not take him to jail if she

allowed the search.  (*Id.* at ¶ 67.)

Plaintiff brought this lawsuit asserting nine claims for relief.  Three § 1983 claims

remain: (1) a Fourth Amendment claim for excessive force against Defendants Gann,

Van Portfliet, and City and County of Denver, (2) a Fourth and Fourteenth Amendment claim for

unlawful entry and search against Defendants Aragon and City and County of Denver, and (3) a

municipal liability claim for failure to train and/or supervise against Defendant City and County

of Denver.

Defendants City and County of Denver, Van Portfliet, and Aragon have moved for

summary judgment on the claims against them.[1]  Defendants argue that Plaintiff's claims for

excessive force against Defendant Van Portfliet and for unlawful entry and search against

Defendant Aragon fail because the individual Defendants are entitled to qualified immunity.

---

[1] Defendant Gann has not moved for summary judgment, and therefore Plaintiff still has a claim for excessive force against him.

Defendants also argue that Plaintiff fails to state any claim for municipal liability against

Defendant City and County of Denver.

**III.    ANALYSIS**

      **A.      Qualified Immunity**

           1.      <u>Defendant Van Portfliet</u>

Defendants argue Plaintiff has not adduced any evidence Defendant Van Portfliet

violated his right to be free from the use of excessive force or shown Defendant Van Portfliet's

conduct violated clearly established law.  The Court agrees.[2]

Claims that law enforcement officers used excessive force in the course of an arrest are

analyzed under the Fourth Amendment's reasonableness test, which "requires a careful balancing

of the nature and quality of the intrusion on the individual's Fourth Amendment interests against

the countervailing governmental interests at stake." *Cortez v. McCauley*, 478 F.3d 1108, 1125

(10th Cir. 2007) (quotation omitted).  The reasonableness of a particular use of force is judged

from the perspective of a reasonable officer on the scene; the question is whether the officer's

actions are objectively reasonable in light of the facts and circumstances confronting him.  *Id.*

When a police officer moves for qualified immunity on an excessive force claim, the plaintiff

must establish that the force used was impermissible and that an objectively reasonable officer

could not have thought the force constitutionally permissible.  *Id.* at 1128.

Here, when the evidence is construed in the light most favorable to Plaintiff, it shows that

Defendant Van Portfliet did little more than grab one of Plaintiff's arms until he was placed in

handcuffs.  And there is evidence Plaintiff and others on the scene told Defendant Van Portfliet

---

[2] The Court further agrees with Defendants' contention that much of Plaintiff's position reinterprets the undisputed facts as submitted.

that Plaintiff was disabled and could not place his hands behind his back.  However, this

evidence is insufficient to show that the force used by Defendant Van Portfliet was

impermissible under the circumstances.  Defendant Van Portfliet testified that he saw Plaintiff

park in front of a crime scene after driving around a police car and Defendant Gann tell him

repeatedly that he could not enter the active crime scene.  He also saw Plaintiff "becom[ing]

increasingly hostile with Officer Gann in his demeanor and the volume of his voice."  (*Id.* at ¶

18.)  Defendant Van Portfliet testified that he saw Plaintiff begin to pull away and turn towards

Defendant Gann, which is consistent with Plaintiff's admission that "he attempted to pull away

when Officer Gann was trying to grab his arm."  (*Id.* at ¶ 34.)  Under the circumstances, an

objectively reasonable officer could conclude that Plaintiff was not going to submit to being

placed in handcuffs without some force being applied.  "[A] small amount of force, like grabbing

[a plaintiff] and placing him the patrol car, is permissible in effecting an arrest under the Fourth

Amendment."  *Cortez*, 478 F.3d at 1128.  Accordingly, Plaintiff has not presented any evidence

that Defendant Van Portfliet used excessive force in helping Defendant Gann place him in

handcuffs.

Nor has Plaintiff shown that Defendant Van Portfliet's failure to adjust his handcuffs,

such as by using two sets of handcuffs, constituted excessive force.  "[A] claim of excessive

force requires some actual injury that is not de minimis, be it physical or emotional."  *Id.* at 1129.

Although Plaintiff alleges that the handcuffs caused him pain, he has not shown evidence of an

actual injury caused by the handcuffs.  Plaintiff alleges that after his arrest he was in severe pain

and that he was diagnosed with "shoulder strain" by an emergency care provider.  However, it is

common for people to complain that handcuffs are uncomfortable or painful, and this is too little

evidence of an actual, more than de minimis injury to support an excessive force claim.

Although Plaintiff was diagnosed with a more significant injury more than a month later, he has

not shown the diagnosis was causally related to his arrest.  Accordingly, the Court concludes

Plaintiff has not shown that Defendant Van Portfliet violated his constitutional rights.

Plaintiff has also failed to show a violation of his clearly established rights because he

has not shown that an objectively reasonable officer could have thought that Defendant Van

Portfliet's conduct was not constitutionally permissible.  This determination provides an

additional basis for concluding Defendant Van Portfliet is entitled to qualified immunity on

Plaintiff's excessive force claim.

2.    Defendant Aragon

Defendants also argue Plaintiff has not shown Defendant Aragon violated his right to be

free from unlawful entry and search or that Defendant Aragon's conduct violated clearly

established law.  Again, the Court agrees with Defendants.

It is well established that "[p]olice officers may search jointly occupied premises if one of

the occupants consents." *Fernandez v. California*, 571 U.S. 292, 294 (2014) (footnote omitted).

Because Plaintiff's wife consented to the entry and search of Plaintiff's home, the only issue

pertaining to Defendant Aragon's entitlement to summary judgment on the claim against him is

whether that consent was coerced and therefore invalid.  "[T]he Fourth and Fourteenth

Amendments require that a consent not be coerced, by explicit or implicit means, by implied

threat or covert force." *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011)

(quotation omitted).

Plaintiff contends that Defendant Aragon obtained his wife's consent by giving her the impression that Plaintiff (who had already been arrested and placed in a police car) would be taken to jail unless she consented to a search of her home.  However, Plaintiff has not argued or adduced evidence that the officers lacked probable cause to arrest him.  In *Eidson v. Owens*, 515 F.3d 1139, 1147 (10th Cir. 2008), the court found that because there was probable cause to arrest a suspect, any coercion stemming from the officer's threat to detain her was minimal, citing with approval a case "suggesting that a detention threat does not impact consent if there is probable cause to arrest the subject."  Further, there is no dispute that Plaintiff's wife understood that she had the right to refuse the search, and Plaintiff does not allege that Defendant Aragon made any material misrepresentations to her when she conversed with him for about half an hour before agreeing to sign a consent form.  (ECF. No. 126-1 at ¶¶ 68-70.)  Thus, even if Defendant Aragon promised to release Plaintiff if his wife consented to a search, Plaintiff still has not shown that the consent was improperly coerced.

Nor has Plaintiff identified clearly established law showing that Defendant Aragon's conduct violated his constitutional rights.  "For the law to be clearly established, the contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Perry v. Durborow*, 892 F.3d 1116, 1122-23 (10th Cir. 2018) (quotation omitted).  Generally, the contours of a particular right are sufficiently clear to put a reasonable official on notice only if a plaintiff identifies an on-point Supreme Court or published Tenth Circuit decision or shows the clearly established weight of authority from other courts has found the law to be as he maintains.  *Id.* at 1123.  Plaintiff has not

identified any existing precedent where an officer acting under similar circumstances as Defendant Aragon was held to have violated someone's constitutional rights.

In *United States v. DiGiacomo*, 579 F.2d 1211, 1216 (10th Cir. 1978), the court held that a suspect indicted for passing counterfeit money had not consented to a search of the currency he was carrying because "before the agents asked to see his cash they told him he was suspected of a serious crime, gave him a faulty recitation of his constitutional rights, told him he could be jailed that night, and told him he had to surrender all the counterfeit money he had." Here, Plaintiff's wife was not told she was suspected of any crime, and she was not given a faulty recitation of her constitutional rights. Although Defendant Aragon is alleged to have told her that Plaintiff could be taken to jail, that was for reasons entirely separate from the shooting the officers were investigating. Therefore, the Court finds that *DiGiacomo* would not have put Defendant Aragon on notice that his conduct here violated Plaintiff's constitutional rights.

Plaintiff's citation to *Eidson* is also unavailing. There, the court found a Fourth Amendment violation when a deputy sheriff who had previously served as the suspect's attorney told him that withholding consent to a search would result in detention, possibly as long as three days, and incur the judge's disfavor. *Eidson*, 515 F.3d at 1148. That unique situation bears little resemblance to the circumstances of this case, and the Court is not persuaded that the case should have made clear to Defendant Aragon that his conduct was unlawful.

Plaintiff cites no other legal authority showing that a reasonable officer could have thought Defendant Aragon's conduct was impermissible. Accordingly, the Court finds Defendant Aragon is entitle to qualified immunity with respect to the claim against him.

9

**B.      Municipal Liability**

Defendants argue Plaintiff's allegations and evidence do not provide a basis for imposing municipal liability on Defendant City and County of Denver.  To the extent Plaintiff's municipal liability claim relies on the conduct of Defendants Van Portfliet and Aragon, the Court has already determined Plaintiff has not shown an underlying violation of his constitutional rights. Thus, the Court considers this claim as it pertains to the conduct of Defendant Gann only.  It is undisputed that on the night of his arrest, Plaintiff interacted primarily with Defendant Gann. (ECF No. 126-1 at ¶ 37.)  Plaintiff alleges that Defendant Gann used excessive force against him by "yanking him out his car, slamming him against it, and arguably a separate incident related to the handcuffing."  (ECF No. 112 at 21.)  Citing Defendant Gann's history of disciplinary problems, Plaintiff argues that Defendant City and County of Denver had a custom of allowing officers to use excessive force and failing to adequately train and supervise them.  The Court finds Plaintiff has not made an adequate showing to establish a municipal liability claim.

To establish municipal liability, a plaintiff must demonstrate a "municipal policy or custom," which may take the form of (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, (3) the decisions of employees with final policymaking authority, (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.  *Bryson v. City of Okla. City*, 627 F.3d 784, 788

10

(10th Cir. 2010) (quotation omitted).  After establishing a municipal policy or custom, a plaintiff

must demonstrate a direct causal link between the policy or custom and the injury alleged.  *Id.*

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but

nonetheless has caused an employee to do so, rigorous standards of culpability must be applied

to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd. of*

*Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  Finally, the plaintiff must establish that the

municipal action was taken with deliberate indifference to his rights.  *Id.* at 407.  "The deliberate

indifference standard may be satisfied when the municipality has actual or constructive notice its

action or failure to act is substantially certain to result in a constitutional violation, and it

consciously or deliberately chooses to disregard the risk of harm."  *Waller v. City and Cty. of*

*Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted).

Assuming for present purposes that Defendant Gann used excessive force against

Plaintiff, Plaintiff has not shown Defendant City and County of Denver had a custom or policy

of failing to train or supervise its police officers or allowing them to use excessive force.  "A

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Although Plaintiff alleges

numerous complaints were made against Defendant Gann, he also alleges Defendant Gann was

subjected to various forms of discipline and close supervision, including a seven-day suspension

and being placed on a performance plan.  According to Plaintiff, these measures were

insufficient to induce Defendant Gann to stop violating people's constitutional rights.

Nevertheless, the fact that Defendant Gann faced consequences for his conduct in the past

significantly undermines Plaintiff's contention that Defendant City and County of Denver had a policy or custom of allowing its police officers to use excessive force.

Moreover, Plaintiff has also failed to identify a specific inadequacy in training or supervision, much less establish a direct causal link between such training or supervision and Defendant Gann's conduct. "[P]roving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents difficult problems of proof, and we must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into *respondeat superior*." *Connick*, 563 U.S. at 70 (quotation omitted). Plaintiff offers only conclusory allegations as to how Defendant City and County of Denver's training program or supervision was related to his injury and falls well short of establishing that Defendant City and County of Denver was the "moving force" behind the constitutional violations he alleges. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Nor has Plaintiff shown that the alleged failure to train and supervise police officers reflects a deliberate or conscious choice by Defendant City and County of Denver. To the contrary, the evidence shows that Defendant City and County of Denver chose to impose various forms of discipline against Defendant Gann when his prior conduct was determined to be inappropriate. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989); *see id.* at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.") Plaintiff has not shown that under the circumstances of this case Defendant City and County of Denver's failure

12

to impose harsher discipline against Defendant Gann amounted to deliberate indifference to the constitutional rights of Denver's inhabitants.  For these reasons, the Court finds Plaintiff has failed to establish a claim for municipal liability.

## IV.     CONCLUSION

Therefore, the Court GRANTS the motion for summary judgment (ECF No. 97), and the claims against Defendants City and County of Denver, Portfliet, and Aragon are hereby dismissed.

DATED this 29th day of May, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

13